**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VIBRANT CREDIT UNION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24 C 669 |
| | ) | |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| UNIFY FINANCIAL FEDERAL CREDIT | ) | |
| UNION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Vibrant Credit Union sues Defendant Unify Financial Federal Credit Union for breach of contract, *see* [1], [65]. Unify moves to dismiss, [66], and, for the reasons explained below, the Court grants the motion.

## A.  FACTUAL BACKGROUND & PROCEDURAL HISTORY[1]

Plaintiff initiated this case on January 25, 2024, and filed the operative complaint on February 7, 2025, [65]. Plaintiff alleges that, in March 2022, it entered into a "Master Non-Recourse Loan Participation and Servicing Agreement" or "LPSA"; pursuant to that agreement, Vibrant paid $10 million for a "participation interest" in a $104 million loan that Unify issued to Liberty Deerfield ("Liberty"). [65] ¶¶ 1, 2, 27–29. Among other things, the LPSA provided that Unify's loan to Liberty was made "in material compliance with all applicable federal and state laws (unless

---

[1] The Court draws these facts from the allegations of Plaintiff's amended complaint, which the Court accepts as true for present purposes. *See Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007).

pre-empted by federal law), regulations, and rules as from time to time amended," including and to the extent applicable: "usury limitations, the Truth-in-Lending Act of 1968, the Equal Credit Opportunity Act, the Rea Estate Settlement Procedures Act, the Fair Housing Act, and the NCUA Rules & Regulations." *Id.* ¶ 28.

Nevertheless, Plaintiff alleges, the loan was made in breach of NCUA rules and regulations because Unify failed to consider all the debt facing Liberty and its affiliates and owners, failed to obtain guarantees from Liberty's majority owner, failed to investigate the debt load facing Liberty, and "failed to assess or unwrite the loan in accordance with NCUA rules, regulations and/or guidance and industry best practices"; Plaintiff also claims the loan breached the NCUA's "Single Borrower Concentration Limit." *Id.* ¶ 30. Vibrant further alleges that Unify sold it a participation interest knowing that Liberty's financial statements were incomplete or inaccurate. *Id.* ¶ 31.

Based on the above, Vibrant sues Unify for breach of the LPSA, [65]. In Count I, Vibrant asserts the LPSA obligated Unify to provide Vibrant with access to "any and all books, records and documents relating to the Loan or related to any of the matters covered by this Agreement" within three days of any request from Vibrant, and to provide additional information including loan documents and financial and non-financial information hearing upon the "quality of the loan"; Vibrant requested such records on December 13, 2023, and Unify failed to honor this obligation. [65] ¶¶ 64–67. As such, Vibrant seeks an order compelling Unify to provide Vibrant with the books and records it seeks. *Id.* ¶ 73.

Vibrant also alleges, in Count II, that Unify breached its representations and warranties under the LPSA and its obligations as Servicer under the LPSA. *Id.* ¶ 80. Vibrant alleges that, but for Unify's failure to take actions to address the borrower's and the guarantor's deteriorating financial status—a situation Unify knew about for months—Vibrant would not have acquired the participation interest in the loan; and because of Unify's inaction, Vibrant incurred millions of damages in damages. *Id.*¶¶ 78–84.

Defendant moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) and under Rule 12(b)(6), *see* [66].

## B. APPLICABLE LEGAL STANDARDS

Defendants move to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6) a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), and giving the defendant "fair notice" of the claim, as well as "the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and must be supported by

3

factual content because "threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

The standard for a Rule 12(b)(1) motion differs only in that the Court "may properly look beyond the jurisdictional allegations" and "view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). On a Rule 12(b)(1) motion, the plaintiff must establish that the jurisdictional requirements have been met. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589 (7th Cir. 2014). If the defendant raises a serious doubt about jurisdiction, then the plaintiff must support its facts with competent proof. *Selcke v. New England Ins. Co.*, 2 F.3d 790, 792 (7th Cir. 1993) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, (1992); *Kontos v. U.S. Dept. of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

Under both Rule 12(b)(1) and Rule 12(b)(6), the Court must construe the complaint in the light most favorable to Plaintiff, accept all well-pleaded facts as true, and draw all reasonable inferences in Plaintiff's favor. *Yeftich v. Navistar*, Inc., 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Dev't Corp.*, 182 F. 3d 548, 554 (7th Cir. 1999). The Court need not accept the complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *Yeftich*, 722 F.3d at 915.

4

**C.      DISCUSSION & ANALYSIS**

Unify moves to dismiss both claims, arguing that Vibrant lacks standing to pursue its claims and, in any event, fails to allege facts to support either claim; Unify also argues that Count I is moot.  The Court considers the parties' arguments below.

**1.      Standing/ Subject Matter Jurisdiction[2]**

Unify first argues that Vibrant fails to allege an injury-in-fact and thus lacks standing.  Standing remains rooted in Article III of the U.S. Constitution, which limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. Art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.").  To meet the "irreducible constitutional minimum of standing," a plaintiff must show that it: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (citing *Lujan*, 504 U.S. at 560–61).  The burden of establishing standing rests with the party invoking federal jurisdiction and, at the pleading stage, that party must "clearly . . . allege facts demonstrating each element." *Id*. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Vibrant alleges that, as a result of Unify's breaches, it "is likely to lose a significant portion of its $10 million Loan Participation interest," [65] ¶ 8, and seeks,

---

[2] Unify's subject matter jurisdiction challenge remains limited to the standing argument, and the parties otherwise agree that subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(d).

among other things, "an award of damages to Vibrant arising out of Unify's breaches of the LPSA in an amount sufficient to compensate Vibrant for the degradation of its Loan participation interest, lost income, and expenses, and potentially a total loss of Vibrant's $10 million "Participation Interest." *Id.* ¶ 10. Vibrant also alleges that, as a result of Unify's breaches, it "has incurred millions of dollars in damages." *Id.* ¶ 84. Vibrant seeks "damages arising out of Unify's breaches of the LPSA in an amount sufficient to compensate Vibrant for the degradation of its Loan participation interest, which may be a total loss of Vibrant's $10 million Participation Interest, plus interest and costs, the costs of protected advances and other amounts Vibrant paid pursuant to the LPSA." *Id.* at 16. Although the parties may not yet know the ultimate extent of the "degradation" of the loan participation interest, the complaint alleges that degradation has already occurred. And those allegations constitute a concrete injury sufficient to support standing.

### 2.    Count I—Books & Records

Unify also seeks to dismiss Count I, arguing that it is moot and that the allegations undermine any claim that Unify failed to provide records upon request. In particular, Unify invokes Vibrant's allegations conceding that Unify "provided Vibrant with stale information, much of which was not relevant. Other information provided to Vibrant exposed additional issues that Unify failed to previously flag, including significant numbers of vacancies and a tenant schedule showing only a handful of major tenants renewing their leases." [65] ¶ 52. Providing stale, irrelevant

information would hardly satisfy an obligation to provide full access to books and records upon request, which is what Vibrant alleges the LPSA obligated Unify to do.

Additionally, Vibrant disputes that the claim is moot. [80] at 5. Vibrant claims that, in October 2023, at least seventeen months after learning that the Borrower had breached the Loan documents, Unify finally informed participants including Vibrant about various issues affecting the Loan, which included an approximately $50 million diminution to the value of the Loan. *Id.* ¶¶ 7, 52. After finally learning of the Borrower's defaults, on December 13, 2023, Vibrant asked to inspect the books and records, and Unify simply ignored that request. *Id.* ¶¶ 56–73. In its reply, Unify argues that, since the inception of this action, "Vibrant has been given access to all of the books and records it has requested, has been provided with an enormous amount of discovery, has been receiving regular update memorandums from Unify and has been invited to participate in numerous participant update phone calls. So, even if Count I had any merit at the time it was filed, given that the only relief sought in Count I is access to books and records, it is now moot." [82] at 3.

Based on the record, this Court agrees that Count I is moot. The LPSA obligated Unify to provide Vibrant with "copies of the Loan Documents that were executed (and/or that are to be executed) by the Borrower as well as by other co-makers, guarantors, and endorsers, as applicable, under the Loan." LPSA § H(1)(d), [77-1] at 5. The Agreement further provided that Unify would serve as the custodian of the original loan documents, and it gave participants like Vibrant the "right at any reasonable time upon three (3) days' prior notice during normal business hours to

request and have access to and examine any and all books, records and documents relating to the Loan or relating to any of the matters covered by this Agreement." *Id.* § J(2), [77-1] at 7. Vibrant does not allege that Unify failed to provide it with the original loan documents. Rather, Vibrant alleges that Unify failed to provide it with access to other books and records in response to Vibrant's December 2023 request. But it does not allege or otherwise explain what documents to which Unify denied it access. At a minimum, Unify provided the requested documents in connection with this case.[3] And, as Vibrant conceded in court when the parties argued Vibrant's motion to compel and the propriety of Vibrant's motion for partial summary judgment on this count, the remedy under the LPSA is to replace Unify as the servicer, and that has already happened. *See* [86].[4] Although Vibrant argues that the change in servicer should be irrelevant, *see* [91], it remains unclear exactly how Unify can now be ordered to provide access to documents it no longer legally holds (especially given Vibrant's failure to say, even now, which documents it has been denied).

Even if Count I were not moot, it would also fail on its merits. To survive a motion to dismiss for failure to state a breach of contract claim, Vibrant "must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of the obligation imposed by that contract; and third, the resultant damage

---

[3] Indeed, in response to Vibrant's motion to compel, this Court ordered Unify to produce these very records, *see* [26-3] at 7; [50].

[4] On June 25, 2025, Unify advised that, pursuant to § K(14) of the LPSA, "participants holding a majority of the Participation Interests in the Loan (including Vibrant) delivered written notice that Unify has been replaced as servicer by GreenState Credit Union as successor servicer with respect to the Loan." *See* [86]. Effective April 23, 2025, GreenState assumed "all servicing rights and duties under the LPSA" and took control of the various Loan documents. *Id.*

to the plaintiff." *Fannin v. UMTH Land Dev., L.P.*, No. CV 12541-VCF, 2020 WL 4384230, at \*23 (Del. Ch. July 31, 2020); *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).[5] Plaintiff's failure to explain what documents it was denied access to precludes satisfaction of the second and third elements: Vibrant's allegations do not suggest a breach by Unify or resulting damages as to books and records.

For these reasons, the Court dismisses Count I.

### 3. Count II—Breach of Obligations and Representations

Unify also argues that Plaintiff's second breach of contract claims fail under Rule 12(b)(6) because the language of the parties' contract precludes it.

First, Unify argues that Count II is barred under § O(2) of the LPSA, which provides that "Any demand for repurchase must be made within one year of the date this Agreement is executed by all Parties or it shall be deemed waived." Unify argues that Vibrant's claim is nothing more than a demand for repurchase and is thus barred. [67] at 11–12. Vibrant denies that it is seeking a buy-back. And because Vibrant is the master of its complaint, *e.g., Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1012 (7th Cir. 2021); *Mordi v. Zeigler*, 870 F.3d 703, 707 (7th Cir. 2017), and the complaint seeks damages for degradation, among other things, not a buy-back, the Court declines to dismiss on this basis.

Significantly, however, other sections of the LPSA undermine the claim Vibrant seeks to assert here. First, the LPSA provides, in the background section,

---

[5] The LPSA includes a Delaware choice of law provision. LPSA § P(10).

that "Buyer has reviewed the Loan Documents and has made an independent investigation into and determination of the Borrower's financial condition and credit worthiness and the value and lien status of the collateral securing the Loan." LPSA § B(2), [77-1] at 3. The LPSA further provides that, "as a result of said independent investigation into and determination of Borrower's financial condition and credit worthiness and the value and lien status of the collateral securing the Loan, Buyer desires to purchase an undivided interest in the Loan on the terms and conditions hereinafter set forth." *Id.* § B(3). Thus, the agreement presupposes that Vibrant independently considered Liberty's circumstances and did not, and could not, rely upon Unify to vouch for the Borrower.

Indeed, the Representations and Warranties section of the Agreement includes, in addition to the Seller's representations and warranties (including those Vibrant says Unify breached), representations and warranties attributed to the Buyer, Vibrant. In executing the LPSA, Vibrant represented and warranted to Unify that it was "a sophisticated investor and lender having the knowledge and/or experience in financial and business matters as to be capable of evaluating the relevant information regarding the borrower, all guarantors, the collateral, the Seller, and the risks of the Buyer's purchase of the Participation Interest, and to the extent necessary, has retained an independent expert to act on the Buyer's behalf who is capable of evaluating the merits and risks of the purchase of the Participation Interest." LPSA, § H(2)(b), [77-1] at 5–6. Vibrant also acknowledged in this section "that Seller has made no representation or warranty of any kind, whether expressed

10

or implied, with respect to the validity, collectability, or enforceability of the Loan, the financial condition of Borrower, or the validity and enforceability of the Loan Documents except as expressly set forth in this Agreement and the documentation provided to Buyer." LPSA § I, [77-1] at 6.

The Agreement also provides that "subject to Paragraph O, the purchase and sale of the Participation Interest is on a 'non-recourse' basis. Each Participant bears the risk of Borrower default on the Loan in proportion to the Participation Interest held by the respective Participant. Seller is not obligated to repurchase a Participation Interest sold on a non-recourse basis merely because the Loan goes into default. The Loan also carries the risk of accelerated principal pay-down up to and including Loan pay off." *Id.* § F, [77-1] at 4.

Although Vibrant alleges that Unify should have advised it about other loans it had with Liberty and its guarantors, the LPSA covers that very situation. By signing the LPSA, the parties "acknowledge and agree that each of them may have other loans outstanding to Borrower and/or may make additional loans in the future to the Borrower and/or other co-makers, guarantors, and endorsers under the Loan, which other and/or future loans need not be participated among themselves or at all." *Id.* § N(1), [77-1] at 17.

Finally, the LPSA provides that, in the event of a breach by the Seller "of any covenant or agreement herein or in any Loan Participation Certificate that is not cured within the applicable cure period, if any," "then and in such event the majority interest holders of the Participation Interests in the Loan shall be entitled to vote to

11

remove Seller as the Servicer." LPSA § M(1), [36-1] at 16. In fact, as noted above, this occurred: the majority interest holders of the participation interest in the loan voted to remove Unify as the Servicer, and, effective April 23, 2025, "Unify assigned to GreenState, and GreenState accepted, all servicing rights and duties under the LPSA and legal title to the mortgage securing the Loan were transferred to GreenState. [86] at 2. The sole remedy contemplated by the LPSA has thus been exercised and effected.

Vibrant's second breach of contract claim, read within the context of the LPSA, fails on its face: the language of the LPSA precludes Vibrant's claim for damages based upon Unify's failure to educate it about any deficiency with respect to Liberty or its guarantors. Without more, and there is nothing more here, Vibrant's claim as pled remains implausible, and the Court dismisses Count II.

**D.    CONCLUSION**

For the reasons explained above, the Court dismisses Vibrant's complaint without prejudice. If Vibrant can, consistent with its obligations under Rule 11, allege facts to support a viable claim under the LPSA, it may file an amended complaint by April 20, 2026.

Date: March 31, 2026                                    Entered:

John Robert Blakey
United States District Judge

12